# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**TOMMY AND PATRICIA D. STUDDARD**  PLAINTIFFS

VS.  CIVIL ACTION NO. 1:06cv190-P-D

**STATE AUTO PROPERTY AND**
**CASUALTY INSURANCE COMPANY**
**AND JOHN DOES 1 THROUGH 10**  DEFENDANTS

## MEMORANDUM OPINION

These matters come before the court upon Defendant State Auto Property and Casualty Insurance Company's motion for summary judgment [37] and motion to strike affidavit testimony [50]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

This lawsuit arises from a claim that Tommy and Patricia D. Studdard filed with their insurance company, State Auto Property and Casualty Insurance Company ("State Auto"), regarding damage caused by the winds of Hurricane Katrina on August 29, 2005. The plaintiffs' home is located in Columbus, Mississippi, some two-hundred miles inland from the Mississippi Gulf Coast. The high winds generated by Katrina caused a tree to fall down on the plaintiff's property, the top branches of which fell upon the edge of the plaintiffs' home. Essentially, the plaintiffs claim that State Auto did not pay for all of the damage that the plaintiffs allege was caused by Katrina.

The plaintiffs purchased their home in May 2005, approximately three months before Katrina. On the day after winds from Katrina caused the tree to fall, the plaintiffs initiated a claim with State Auto on August 30, 2005. On September 2, 2005 an adjuster, Bob Garner, surveyed the

1

damage. On September 4, 2005 Garner's adjuster company sent a letter to Studdard instructing him to keep damaged items for inspection. On September 9, 2005 Garner provided Studdard with a copy of his notes which identified the damage he found. On September 13, 2005 Studdard contacted Garner to report additional damage he had discovered during the two weeks after Katrina, including ripples in the hardwood floors and roof. On September 16, 2005 Garner visited the property for a second time and informed Studdard that an engineer was needed to evaluate the damage. On September 26, 2005 Studdard received a check from State Auto to remove the debris caused by the fallen tree.

On October 3, 2005 Studdard called Garner the adjuster about when the engineer would arrive. Studdard states that later that day Bob Wauman called him and stated that it would be two more weeks before the engineer could arrive. Studdard states that he called Garner back and relayed his concerns that the house was unsafe to live in and that the delays were causing additional damage to his home. Studdard offered to assist in finding a local engineer and Garner agreed. On October 8, 2005 the engineer, Ed Springer, inspected the plaintiffs' home. On October 17, 2005 Springer inspected the home a second time, concentrating upon the attic and the basement. On October 25, 2005 Springer submitted his report which spoke to the plaintiffs' claim for the crack in the east wall of the bathroom and the damage to the rain gutter and some of the roof shingles. The report also states that the larger cracks in the basement walls "appeared to have been in existence prior to the impact of the tree" and that the "exact cause" of the cracks in the rafter ends and facia board on the west side of the house was not determined.

On November 21, 2005 Studdard called his adjuster, Garner, and was directed to another adjuster, Bruce Tozer. Tozer inspected the plaintiffs' home on November 22, 2005. According to

Studdard, Tozer told him that it appeared reasonable for the family to move out of the home while the necessary repairs were made and verbalized his concerns about the mold in the basement. On November 25, 2005 Studdard faxed a copy of a proposed lease agreement for new lodgings to Tozer. On November 29, 2005 Studdard states that Tozer confirmed that he had received the fax and that he was awaiting State Auto's approval. Studdard also states that Tozer instructed him to contact a company to evaluate the mold that was developing in the basement. On November 30, 2005 Studdard states that he called Tozer to inquire about State Auto's approval of the lease agreement and to tell him that ServPro has inspected the home and had found mold. Studdard states that Tozer told him that due to the extent of the needed repairs to the house, the claims was being assigned to another adjuster, Jerry Hancock.

On December 8, 2005 Hancock and another engineer, Neil Kirschenbaum made the eighth inspection of the plaintiffs' home. On December 13, 2005, having heard nothing from Hancock, Studdard filed a Complaint with the Mississippi Department of Insurance.

Kirschenbaum's December 19, 2005 report stated that the purpose of his inspection was to determine the damage caused by the falling tree. Kirschenbaum opined, similar to Springer, that the fallen tree caused a horizontal crack in the east wall of the bathroom, damage to the gutter, damage to some of the shingles, as well as a broken window and scrapes to the exterior siding. Regarding the other damage, Kirschenbaum opined that the cracks in the basement wall were caused by foundation movement and noted that the basement steps, patio retaining wall were tilting toward the slope behind the house because of earth movement and/or settling. Based on the findings by Springer and Kirschenbaum, Hancock estimated the repair costs for the covered replacement cost value of the damages to be $3,698.77 after applying the P's $1000 deductible.

The Studdards refused to accept the check because it contained language regarding settlement of the plaintffs' claim. State Auto sent another check that reserved the plaintffs' rights whereupon the Studdards cashed it. In their deposition, the plaintiffs admit that they did not use the money to repair their home.

The plaintiffs filed the instant lawsuit on June 29, 2006 asserting that the check sent by State Auto did not cover all of the damage caused by Katrina. The Complaint asserts the following claims against State Auto: (1) request for declaratory judgment that the plaintiffs are entitled to coverage for all the damage that occurred as a result of Katrina; (2) request for an injunction requiring State Auto to pay the full amount of the property damage; (3) request for specific performance of the insurance contract; (4) indemnity for the plaintiff's out-of-pocket expenses; (5) unjust enrichment / constructive trust; (6) fraud; and (7) bad faith.

State Auto filed the instant motion for summary judgment arguing that all of the plaintiffs' claims should be dismissed because (1) the additional damage to their home was caused by "earth movement" and "water damage" both of which are excluded by the policy; (2) the plaintiffs cannot establish bad faith because State Auto had a legitimate or arguable reason for partially denying the claim; (3) the plaintiffs cannot establish that State Auto acted recklessly or maliciously towards the plaintiffs, especially given that State Auto was overwhelmed by Katrina claims; and (4) the plaintiffs have no expert testimony establishing that the additional damage complained of was directly caused by the windstorm and the fallen tree.

The bulk of the plaintiffs' response is a recitation of a chronology of events. The plaintiffs argue that there are genuine issues of material fact regarding whether the additional damage was caused by the windstorm and whether State Auto handled the plaintiffs' claim properly.

State Auto filed a motion to strike affidavit testimony submitted in support of the plaintiffs' opposition to State Auto's motion for summary judgment. Specifically, State Auto moves to strike the affidavit of the plaintiffs' expert engineer Steven Morin, all or portions of Tommy Studdard's affidavit, and Geraldine Tenhet's affidavit.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts

are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Motion to Strike**

State Auto moves to strike the affidavits of the plaintiffs' expert, Steven Morin, Tommy Studdard, and Geraldine Tenhet attached in support of the plaintiffs' opposition to State Auto's motion for summary judgment. State Auto filed their motion to strike on September 21, 2007. The plaintiffs' deadline to respond was October 9, 2007. As of this date, the plaintiffs have filed no response, nor have they otherwise contacted the court for additional time to do so.

With regard to Morin's affidavit, the defendant argues that the opinions expressed in the affidavit contradict his previous opinions and that these new opinions were rendered well after the expert deadline of May 1, 2007. Pursuant to Fed. R. Civ. P. 26(a)(2)(B), the expert report must have contained "a complete statement of all opinions to be expressed and the basis and reasons therefor...." Uniform Local Rule 26.1(a)(2)(B) provides in pertinent part that "[a]n attempt to designate an expert without providing full disclosure information as required by this rule will not be considered a timely expert designation and may be stricken upon proper motion or *sua sponte* by the court." State Auto avers that the plaintiffs never disclosed before August 23, 2007 (almost four months after the expert deadline had passed) that Morin would have new opinions that related to the ultimate issue in this case. Therefore, the defendant continues, State Auto had no opportunity to depose Morin regarding these new opinions since the discovery deadline passed on April 25, 2007.

The court concludes that Morin's affidavit should be stricken as untimely pursuant to Fed. R. Civ. P. 26(a)(2)(B) and Uniform Local Rule 26.1(a)(2)(B).

State Auto also moves to strike Geraldine Tenhet's affidavit, arguing that Tenhet is a real estate appraiser, not an engineer, and therefore is not qualified pursuant to Fed. R. Evid. 702 to offer testimony regarding the Studdards' home. The court concludes that State Auto's motion to strike

7

Tenhet's affidavit should be denied since she does not opine regarding the cause or causes of the damage sustained to the plaintiffs' home. Rather, she merely states that her inspection in the capacity as a real estate inspector, revealed none of the problems complained of by the plaintiffs after Katrina. Though Tenhet is not an engineer, she is qualified to opine regarding whether she observed any of the damage complained of when she performed her inspection a few months before Katrina. However, she would not be considered an expert on this topic, but rather a lay witness.

Finally, State Auto moves to strike Plaintiff Tommy Studdard's affidavit. The court finds that the motion should be denied because the affidavit does not purport to opine regarding the causes of all of the claimed damage. Rather, the affidavit simply states Studdard's opinion that his home was in excellent condition when he purchased it three months before Katrina. One need not be an engineer to visually inspect one's own house and determine that certain problems that arose later did not exist before. As with Tenhet, Studdard's testimony in this regard would be that of a lay witness and not a Rule 702 expert.

## C. State Auto's Motion for Summary Judgment

The ultimate issue in this case is whether all of the damage sustained to the plaintiffs' home is covered by the subject policy. It is undisputed that the policy covers damage from windstorms. The policy also contains the following relevant exclusions:

**SECTION I - EXCLUSIONS**

\*\*\*

**2. Earth Movement**
Earth movement means:
a. Earthquake, . . .;
b. Landslide, mudslide or mudflow;
c. Subsidence or sinkhole; or

8

> d. Any other earth movement including earth sinking, rising or shifting; caused by or resulting from . . . any act of nature. . . .
>
> **3. Water Damage**
> a. Flood, surface water, . . .;
> c. Water or water-borne materials below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; caused by or resulting from . . . any act of nature.

Policy form HO 0003 (10/00), pgs. 10-11 of 20 and HO 0427 (04/02), pg. 2 of 3.

Ed Springer, the first engineer to inspect the plaintiffs' home, completed his report on October 25, 2005. In this report, Springer wrote:

> Recently, during Hurricane Katrina, a large oak tree was blown down on the East side of the dwelling and the top branches impacted the edge of the East roof and the East wall. In an attempt to assess the damage to the structure from this encounter, a visual structural inspection of the inside and outside of the facility was conducted. The results of this endeavor is depicted in the attached photographs and described below.

The court observes that Springer's report is ambiguous in terms of what he opines was the exact cause of all of the damage mentioned in the report. Reasonable persons could differ as to what damage Springer attributes to the windstorm and the fallen tree.

Neil Kirschenbaum, the second engineer hired by State Auto to inspect the plaintiffs' home before the instant lawsuit was filed, is clearer in his opinion that the additional damage claimed by the plaintiffs, *e.g.*, the cracks in the sheetrock and basement walls, was caused by earth movement or settlement and water damage. In his December 19, 2005 report, Kirschenbaum concluded that "[t]he defects in the gutter, the windows, the crack in the bath wall tile, the edge shingles and the scrapes on the siding, all on the wall directly impacted by the tree limbs are the only structural damage I can [attribute] to the tree limbs impacting the house" and "[t]he cracks in the basement

walls and other portions of the house are the result of foundation movement and were not caused by the tree limbs."

It was on the basis of the opinions of engineers Springer and Kirschenbaum that State Auto decided which portions of damage were covered by the policy.

The plaintiff's expert Steven Morin, an engineer who inspected the home after the instant case was filed, opines in his May 14, 2007 report in pertinent part that: (1) the tree fall damaged "a minor amount of roof and collaps[ed] the gutter"; (2) "[s]evere foundation displacement has occurred along the east foundation wall, which was observed in the basement. The cracking in the concrete block walls and the separation of the concrete floor are apparently recent and are the result [of] this displacement. This type of damage is common to volume changes of plastic soils due to water saturation. The west basement wall has been subject to water damage which has occurred for many years and is not the result of Katrina or tree impact"; (3) "[t]he exterior basement steps and retaining wall also show recent displacement and cracking. This is also common to volume changes of plastic soils due to water saturation."; (4) "The reason for the above described damage is due to the failure of the gutter system which has allowed rainwater to spill directly on the east exterior foundation. ... Not only did the rainfall of Katrina Impact this area, a continuous saturation of water since this event is progressively increasing foundation damage and undermining the foundations is a definite possibility which could damage this building beyond normal repair."

Though the court believes that reasonable minds can differ in construing the opinions of Springer, Kirschenbaum, and Morin, in determining the first cause in the sequence of causes that resulted in all of the damage complained of by the plaintiffs, the subject policy contains a very important paragraph in its Exclusions section: "We do not insure for the loss caused directly or

indirectly by any of the following [including "earth movement" and "water damage"]. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These restrictions apply whether or not the loss event results in widespread damage or affects a substantial area." Policy form HO 0003 (10/00), pgs. 10-11 of 20 and HO 0427 (04/02), pg. 2 of 3.

The interpretation of an insurance policy is a question of law, not one of fact. *Lewis v. Allstate Ins. Co.*, 730 So.2d 65, 68 (Miss. 1998). In *Centennial Insurance Company v. Ryder Truck Rental, Inc.*, the Fifth Circuit summarized the rules of interpretation of insurance contracts in Mississippi as follows:

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

149 F.3d 378, 382-83 (5th Cir. 1988).

Mindful of these rules of insurance contract construction, the court concludes that the policy plainly and unambiguously excludes damage caused by "water damage" and "earth movement" regardless of whether a covered cause (such as a "windstorm") sets in motion a sequence of events resulting in "water damage" or "earth movement." The plaintiffs have offered no admissible expert

11

testimony stating that the additional damage was *directly* caused by the windstorm of Katrina. Rather, Morin's May 14, 2007 report attributes the cracks to "water saturation" caused in part by the displaced gutter caused by the fallen tree. Assuming *arguendo* that this is true, damage from water saturation is excluded by the policy "regardless of any other cause or event [*i.e.*, the winds or the fallen tree] contributing concurrently or in any sequence to the loss."

Similarly, though the policy has an endorsement which appears to cover $50,000 in mold damage, section 13.b. provides that this coverage "only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred." Though the plaintiff argues that he did not repair any of the damage to his home because he was instructed by letter not to disturb the site until after the insurance company's inspection, the plaintiff offers no evidence that the mold was caused by an event other than excluded "water damage" or "earth movement."

Accordingly, all of the plaintiffs' claims fail as a matter of law. With regard to the bad faith claim, the plaintiffs have not demonstrated by clear and convincing evidence that (1) there was a wrongful refusal to pay the claim; (2) there was no legitimate or arguable reason for the refusal; and (3) there were the additional circumstance of willfulness, maliciousness, abusiveness, or recklessness. *U.S. Fidelity & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992); *Richards v. Amerisure Ins. Co.*, 935 F.Supp. 863, 867-68 (S.D.Miss. 1996); *Bradfield v. Schwartz,* 936 So.2d 931, 936 (Miss. 2006); Miss. Code Ann. § 11-1-65(1) (West 2007).

## III. CONCLUSION

For the reasons discussed above, the court concludes that the plaintiffs have failed to offer evidence creating a genuine issue of material fact warranting a trial. Even after viewing the facts in a light most favorable to the plaintiffs, the subject policy clearly excludes any damage caused by "water damage" or "earth movement" "regardless of any other cause or event contributing concurrently or in any sequence to the loss." Therefore, the plaintiffs claims – all of which are premised upon whether or not the policy covers all of the damage sustained to the plaintiffs' home – necessarily fail as a matter of law. Accordingly, a Final Judgment shall issue forthwith,

**THIS DAY** of October 17, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE